**IN THE DISTRICT COURT OF THE UNITED STATES FOR THE**

**MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **CRIMINAL ACTION NO.** |
| v. | ) | **2:23cr99-MHT** |
| | ) | **(WO)** |
| **LAVONTE CARDELL CONN** | ) | |

**OPINION**

**Defendant Lavonte Cardell Conn pleaded guilty to three offenses: possessing a controlled-substance analogue with intent to distribute in violation of 21 U.S.C. § 841(a)(1), possessing a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i), and possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1). His two prior felony convictions qualified him for "career offender" status under U.S.S.G. § 4B1.1, which dramatically increased the recommended amount of time he would spend in prison under the United States Sentencing Guidelines. Conn moved for a downward variance.**

**A sentencing hearing was held on April 3, 2024.**

Based on its consideration of the factors set forth in 18 U.S.C. § 3553(a), the court granted Conn a variance and imposed a final sentence of 206 months' custody--146 months for possessing a controlled-substance analogue with intent to distribute and possessing a firearm as a convicted felon, to run concurrently with each other, and 60 months for possessing a firearm in furtherance of a drug-trafficking crime, to run consecutively. This decision was based largely on the court's determination that Conn's criminal record did not warrant the career-offender guideline's full application. This opinion elaborates on the court's reasons.

## I. BACKGROUND

On February 24, 2023, law enforcement learned from a confidential source that Conn was a supplier of MDMA. The confidential source contacted Conn and arranged a

purchase of two ounces of MDMA for $ 380. Officers initiated an arrest as soon as Conn arrived in his vehicle at the agreed-upon site for the exchange. Officers saw suspected MDMA in the front seat and, after searching the car, recovered 436 grams of suspected fentanyl, 226 grams of suspected marijuana, and a loaded firearm that had been reported stolen. A laboratory analysis revealed that the suspected fentanyl was, in reality, a controlled-substance analogue.[1]

The parties entered a nonbinding plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(B), under which the government agreed to recommend a sentence at the bottom of the applicable Guidelines

---

1. A controlled-substance analogue is any substance with a "substantially similar" chemical makeup or effect as "a controlled substance in schedule I or II." 21 U.S.C. § 802(32)(A). Here, the substance was "1-(1,3-Benzodioxol-5-yl)-2-(dimethylamino) pentan-1-one(N,N-Dimethylpentylone), a synthetic cathinone." Presentence Investigation Report ¶ 10.

range.

At the sentencing hearing, the court determined that two of Conn's prior felony convictions subjected him to a U.S.S.G. § 4B1.1 career-offender enhancement. Guideline 4B1.1 defines a defendant as a career offender if (1) he was 18 years old or older before committing the current offense, (2) the current offense is a controlled-substance offense or a crime of violence, and (3) he has two or more prior convictions for a controlled-substance offense or a crime of violence. The court found that § 4B1.1 applied to Conn because he was at least 18 years old when he committed the instant offenses and because he had two qualifying prior convictions: third-degree robbery, *see* Ala. Code § 13A-8-43, and second-degree assault, *see* Ala. Code § 13A-6-21. Both are crimes of violence under U.S.S.G. § 4B1.2(a). Conn, who is now 30 years old, committed these predicate offenses when he was 19 and 20, respectively.

4

The career-offender guideline drastically increased Conn's sentencing range. Without applying that guideline, he would have had a criminal-history category of V and an adjusted offense level of 23 for two of his convictions: possessing a controlled-substance analogue with an intent to distribute and possessing a firearm as a convicted felon. Combined with the 60-month consecutive sentence for possessing a firearm in furtherance of a drug-trafficking crime, his total range would have been 144 to 165 months. Under § 4B1.1, however, he was subject to an automatic criminal-history category of VI, and, despite his receipt of the maximum three-level reduction for acceptance of responsibility, his total range increased to 262 to 327 months, or approximately 22 to 27 years. This range corresponded to an offense level of 34, which is one of the highest offense levels available under the Guidelines. In other words, the Guidelines recommended sentencing Conn to approximately

10 to 14 more years in prison due to the career-offender enhancement.

## II. DISCUSSION

A sentencing court has considerable discretion in determining an appropriate sentence, but the sentence must be reasonable. *See United States v. Irey*, 612 F.3d 1160, 1188-89 (11th Cir. 2010). In determining a defendant's sentence, courts must consider the recommended sentence under the Guidelines and any relevant policy statements. *See* 18 U.S.C. § 3553(a); *see also United States v. Booker*, 543 U.S. 220, 259-60 (2005). However, the Guidelines are only "one factor among several courts must consider in determining an appropriate sentence." *Kimbrough v. United States*, 552 U.S. 85, 90 (2007). Courts must also consider the factors listed in 18 U.S.C. § 3553(a). While Guidelines sentences generally should approximate the § 3553(a) factors, trial courts may, in the course of

6

an individual sentencing, determine that "the case at hand falls outside the 'heartland' to which the Commission intends individual Guidelines to apply" or that "the Guidelines sentence itself fails properly to reflect § 3553(a) considerations."  *Rita v. United States*, 551 U.S. 338, 351 (2007).  Under those circumstances, a court may vary accordingly.

Here, such circumstances apply.  More specifically, § 4B1.1 "creates unwarranted uniformity because it lumps together for identical treatment defendants with vastly different criminal histories.  The guideline treats a wide range of offenses of varying severity as controlled-substance offenses and violent offenses warranting application of the career-offender enhancement. ... [T]he career-offender guideline does not distinguish between prior convictions based on how long ago they happened, the quantity of drugs involved, whether the defendant played a major or minor role in a prior offense, whether anyone was injured in the

7

offense, or other factors that are relevant to assessing the seriousness of a defendant's criminal history.  And all defendants who qualify for the career-offender enhancement have their criminal-history category bumped to the highest level, regardless of the criminal-history category they would have otherwise received.  Thus, if convicted of the same new offense based on the same criminal conduct, a defendant who had two felony drug convictions for first-degree possession of marijuana under Alabama law--no matter how small the quantity possessed--would receive the same criminal-history category and sentencing range under the career-offender guideline as another defendant with prior convictions for murder and conspiracy to distribute 100,000 kilograms of heroin." *United States v. Dixon*, No. 2:16cr16-MHT, 2016 WL 4492843, at *3 (M.D. Ala. Aug. 5, 2016) (Thompson, J.).

When a court determines that applying a guideline as written would lead to unduly harsh or inequitable

8

results, "an outside the guideline sentence may not be optional; it may well be essential to prevent both unwarranted disparity and unwarranted uniformity." *United States v. Whigham*, 754 F. Supp. 2d 239, 252 (D. Mass. 2010) (Gertner, J.); *see also Pepper v. United States*, 562 U.S. 476, 510 (2011) (Breyer, J., concurring in part and concurring in the judgment) ("Fairness requires sentencing uniformity as well as efforts to recognize relevant sentencing differences."). To avoid unwarranted disparity or unwarranted uniformity, a court can use a variance to "calibrate" a sentencing adjustment to the defendant's particular circumstances. *United States v. Conway*, No. 2:19cr61-MHT, 2019 WL 7161326, at *3 (M.D. Ala. Dec. 23, 2019) (Thompson, J.).

In the instant case, the court determined that a calibration was appropriate. On the one hand, the felony convictions that made Conn eligible for the career-offender enhancement placed him well outside of

9

§ 4B1.1's 'heartland.'  He committed the predicate offenses when he was 19 and 20, around a decade ago, and before he had matured to the point where he could think through his actions fully and appreciate their consequences.  The court could not justify sentencing him to 10 to 14 more years in prison than the Guidelines otherwise prescribed based on the misguided decisions he made a decade ago during his youth.  *Cf.* Sentencing Guidelines for United States Courts, 88 Fed. Reg. 89142, 89146 (Dec. 26, 2023) ("Research has shown that brain development continues until the mid-20s on average, potentially contributing to impulsive actions and reward-seeking behavior ... .").

But, on the other hand, the court could not disregard the career-offender enhancement altogether.  The predicate offenses were serious; for example, Conn was convicted for second-degree assault after shooting someone four times.  He has not been a stranger to law enforcement since then, either.  When the presentence

10

investigation report was issued, he had eight charges pending against him in state court, several of which allegedly involved controlled substances. Although those charges have not been proven, they were numerous enough to merit the court's attention. After considering the nature of Conn's predicate offenses and the allegations that have mounted against him since, the court concluded that Conn had an unusually voluminous and concerning criminal history. Therefore, a sentencing enhancement was warranted to promote public safety, reflect the severity of Conn's misconduct, and deter him from engaging in any further criminal activity.

To determine the extent of the calibration, the court took the average of the Guidelines ranges with and without the career-offender enhancement, which yielded a modified sentencing range of 203 to 246 months. The sentence the court ultimately imposed, 206 months' custody, was toward the bottom of this range.

***

Accordingly, for the reasons stated above, the court granted Conn's motion for a variance (Doc. 85) and sentenced him to a term of 206 months.

DONE, this the 24th day of May, 2024.

/s/ Myron H. Thompson
**UNITED STATES DISTRICT JUDGE**